DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Carlos Ortega, aka June Ortega, appeals from the judgment entry of conviction and sentence entered in the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} On August 19, 2004, the Lorain County Grand Jury indicted Appellant on one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), a first-degree felony, and one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a first-degree felony. Each charge carried a three-year firearm specification as well as a one-year firearm specification.
 {¶ 3} Subsequently, the Grand Jury returned a supplemental indictment that charged Appellant with the following: (1) one count of aggravated murder, in violation of R.C. 2903.01(B), a special felony; (2) one count of murder, in violation of R.C.2903.02(B), a special felony; (3) one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony; (4) one count of aggravated robbery, in violation of R.C.2911.01(A)(3), a first-degree felony; (5) one count of robbery, in violation of R.C. 2911.02(A)(1), a second-degree felony; (6) one count of tampering with evidence, in violation of R.C.2921.12(A), a third-degree felony; (7) one count of felonious assault, in violation of R.C. 2903.11(A)(1)/2903.11(A)(2), a second-degree felony. Each supplemental charge carried two separate firearm specifications. All the charges were based on Appellant's alleged aiding and abetting of Ruben Rivera in the commission of these offenses, which ultimately resulted in the death of Manuel Garcia.
 {¶ 4} Appellant pled not guilty to the charges. The case proceeded to a jury trial. A jury found Appellant guilty of all charges except the two aggravated robbery counts and the robbery count. The trial court entered a judgment of conviction and sentence. The court sentenced Appellant to a prison term of 27 years to life. The term consisted of 20 years to life for the aggravated murder count; one year for the first firearm specification and three years for the second firearm specification; and three years for the tampering with evidence count, which included a mandatory, consecutive one-year term for the firearm specification. The court ordered these terms to be served consecutively, and made certain findings to support consecutive sentences, citing R.C. 2929.14(E) as the basis for these findings.
 {¶ 5} Appellant timely appealed from his conviction and sentence, asserting three assignments of error for review. We address Appellant's first and second assignments of error together for ease of review.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(A) OHIO RULES OF CRIMINAL PROCEDURE WITH RESPECT TO THE COUNTS OF THE INDICTMENT CHARGING THE OFFENSES OF AIDING AND ABETTING AGGRAVATED BURGLARY, AGGRAVATED MURDER, AGGRAVATED ROBBERY, ROBBERY, MURDER, AND FELONIOUS ASSAULT[.]"
 Second Assignment of Error
"THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT ORTEGA HAD COMMITTED THE OFFENSE OF TAMPERING WITH EVIDENCE[.]"
 {¶ 6} In his first and second assignments of error, Appellant asserts that the trial court erred in denying his motion for judgment of acquittal pursuant to Crim.R. 29(A) on the charges of aggravated burglary, aggravated murder, aggravated robbery, robbery, murder, felonious assault, and tampering with evidence. Specifically, Appellant contends that the State failed to present sufficient evidence to establish certain elements of each offense. This Court disagrees.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997),78 Ohio St.3d 380, 386. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 8} We begin our analysis of this assignment of error with the observation that Appellant was ultimately acquitted of the aggravated robbery and robbery charges. Thus, any challenge regarding these charges is moot. See State v. Williams (1996),74 Ohio St.3d 569, 576. Remaining are Appellant's challenges to the convictions for aggravated murder per R.C. 2903.01(B), murder per R.C. 2903.02(B), aggravated burglary per R.C. 2911.11(A)(2), felonious assault per R.C. 2903.11(A)(1) and (2), tampering with evidence per R.C. 2921.12(A).
 {¶ 9} R.C. 2903.01, aggravated murder, provides:
"(B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." R.C. 2903.01(B).
 {¶ 10} R.C. 2911.11(A)(1) and (2), aggravated burglary, states:
"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
"(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 11} Appellant was also convicted of felonious assault per R.C. 2903.11(A)(1) and (2), which state, "No person shall knowingly * * * [c]ause serious physical harm to another or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 12} Finally, R.C. 2903.02(B), Ohio's felony-murder statute, proscribes the following:
"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04
of the Revised Code."
 {¶ 13} The offenses of aggravated burglary and felonious assault are all offenses of violence as defined in R.C.2901.01(A)(9)(a). Furthermore, aggravated burglary is a first-degree felony, see R.C. 2911.11(B), and felonious assault is a second-degree felony, see R.C. 2903.11(D). The trial court instructed the jury that they had to find that these offenses were committed in order to find Appellant guilty of aiding and abetting the principal offender in the commission of these offenses.
 {¶ 14} At trial, the State presented the testimony of nine witnesses, and introduced into evidence the nine millimeter handgun that Appellant admitted to owning and possessing at the time the offenses occurred. Appellant did not testify and did not present any witnesses on his behalf.
 {¶ 15} The victim's girlfriend, Shreaka Bason, testified that the victim sold drugs for a living. Ms. Bason testified about the day in question as follows: Around 8:30 p.m. on August 13, 2004, Ms. Bason and the victim were at the victim's house on Colorado Avenue in Lorain, Ohio, with Ms. Bason's infant daughter. They decided to get food from McDonald's, and knew that their neighbor's wife, Mrs. Fedikovich, was planning on going to McDonald's. Ms. Bason walked outside to see if Mrs. Fedikovich had left yet, and noticed that she had. However, at the same time, she noticed a car with people inside it in the victim's driveway. Because they were not expecting anyone at that time, Ms. Bason went inside and closed the blinds. The victim then asked Ms. Bason to go outside to see who it was. As Ms. Bason turned around to go outside, she saw several people standing at their front door. Ms. Bason recognized the person closest to the door to be Ruben Rivera, as part of his face was uncovered. Ms. Bason had seen Rivera on several occasions in the past at social functions, and earlier that day, she and the victim had driven to Rivera's house. Ms. Bason also testified that she had seen Appellant on several occasions in the past, including once when Appellant stopped by the victim's house. Appellant was an admitted heroin user.
 {¶ 16} Ms. Bason's testimony continued as follows: Rivera opened the door uninvited; he covered the rest of his face with a fabric of some sort, and was wearing a hood and dark clothing. The other individual also had on dark clothing. Rivera pointed a revolver-type, "Dirty Harry" gun at the victim, who was sitting on the couch directly in front of Rivera, and shot at him. Ms. Bason then grabbed her daughter and ran outside, calling for help. As she ran away from the house, Ms. Bason heard footsteps; she turned to look at the front door of the victim's house and saw two other people dressed in black and faces covered run into the house. She heard two more shots fired as the other two individuals ran into the house, and then saw all three men run out of the house. Then, Ms. Bason saw the victim run out of the house towards her and fall to the ground. Ms. Bason tried giving the victim CPR, but to no avail. Ms. Bason then ran back into the house to call 9-1-1, but noticed that the phone was ripped off the wall and was inoperable.
 {¶ 17} Michael Fedikovich, the neighbor who witnessed the incident from the back porch of his house, testified as follows: At around nine o'clock in the evening on August 13, 2004, Mr. Fedikovich was sitting on the back porch steps of his house at 453 Colorado Avenue in Lorain, Ohio, smoking a cigar. From this vantage point, Mr. Fedikovich was about 35-40 feet from the victim's house. Mr. Fedikovich could see straight into the victim's house through the glass screen door, as the house was lit inside. Mr. Fedikovich noticed a dark beige to light brown four-door car pull up in the alley between his house and that of the victim. There were three occupants in the car, and they sat in the car for about ten to 15 seconds, "fumbled" inside the car, and then proceeded to get out of the car and walk in front of the victim's house. He then "saw the three guys[;] [o]ne guy pulled something, like a hood, over his head; the other two gentlemen pulled hats [or skullcaps] over their head [sic], and they pulled something over their face, as if to hide their face [sic]." Mr. Fedikovich also noticed that the three individuals had on dark, baggy clothing. He then saw the man with the hood walk through the door and into the house without knocking, and posed with his arms out with an object in his hands. Mr. Fedikovich then turned around to re-enter his house to call 9-1-1; it was at this point that he heard a gunshot, followed by a pause, and then two more gunshots. Mr. Fedikovich then ran back outside to find Ms. Bason running towards his house, screaming hysterically and carrying her infant daughter. The victim had staggered outside and collapsed about four to six feet from Mr. Fedikovich's back porch steps, blood flowing from a gunshot wound in his left side. Ms. Bason gave the victim CPR, but the attempt was unsuccessful. By that time the tan car was gone.
 {¶ 18} Lorain County Coroner Paul M. Matus, M.D., testified to a reasonable degree of medical certainty that the victim's death was caused by a projectile that entered his chest and caused damage to internal organs and caused massive bleeding into the right chest area. Dr. Matus also testified that the victim was shot at from a close range of about a two to three feet.
 {¶ 19} Detective Mark McCoy from the Lorain Police Department testified regarding his investigation of the crime scene as follows: Two gunshots penetrated the wall right above the couch. A slight blood pattern started from the couch and continued on the floor all the way to the location where the victim eventually collapsed. Heroin, marijuana, and drug paraphernalia were found on the dresser in the victim's bedroom.
 {¶ 20} Patrolwoman Georgeanne Cockrell from the Lorain Police Department testified that she responded to a call regarding a tan foreign-made vehicle with three Hispanic males wearing black clothing and black hats or masks. On her way to the scene of the crime, Cockrell noticed a Honda vehicle that fit the description. The driver of the vehicle was driving over the speed limit and weaving in and out of traffic. Cockrell noticed that the driver of the vehicle, Bruce Chisolm, was wearing a black bandana. Cockrell pulled up behind the vehicle and turned on her lights. The driver's side back door was open; the occupant in the backseat fled the scene. Appellant was sitting in the front passenger seat, Chisolm still occupied the driver's seat, and the backseat of the car was empty. Cockrell observed Appellant try to get out of the vehicle, and ordered Appellant to stay in the car and not move. However, Appellant failed to comply with this request. Cockrell testified that Appellant "was fiddling around under the seat; he couldn't sit still." Cockrell then noticed a black bandana and black clothing laying at Appellant's feet. Cockrell found a magazine laying outside on the ground in close proximity to the passenger door of the car; a loaded nine millimeter Smith and Wesson pistol lay ten feet from the passenger door outside of the vehicle. Cockrell also found an ejected live round of ammunition about six feet away from the door. A black skullcap was later discovered underneath the backseat of the police cruiser in which they placed Chisolm; Chisolm later identified this to be his cap.
 {¶ 21} Sergeant Albert Rivera from the Lorain Police Department Narcotics Unit participated in the homicide investigation. Upon inventorying the Honda, Sergeant Rivera discovered a bandana and black-and-white ball cap on the backseat of the car. A black ball cap with a nylon bandana was found on the front passenger floorboard. Also recovered from the Honda were a gun case, a black scarf, and other miscellaneous clothing in the backseat. Sergeant Rivera testified that Appellant insisted that he had not fired a gun within 24 hours of the incident but that he had held a gun; Appellant then admitted that there was a gun in the vehicle. Appellant explained that he had obtained the gun from a family member as a family heirloom that had been in the family for years. When questioned about why he was in Lorain that evening, Appellant explained that he had been asked by Chisolm to come to Lorain to visit Chisolm's girlfriend. Appellant denied that he was ever at the victim's home, and insisted that he was there just to visit Chisholm's girlfriend; Appellant did not know where she lived, however. Appellant also identified the person that fled from the scene as "Billy"; he did not know the suspect's actual full name.
 {¶ 22} Detective Mark Carpentiere of the Lorain Police Department was the lead investigator in the instant case, and as part of his involvement, he traced the nine millimeter gun. Detective Carpentiere discovered that the gun had been stolen. The gun's most recent owner was Officer William Cunningham, II, of the Cleveland Police Department. Officer Cunningham testified that his Smith and Wesson nine-millimeter handgun that was registered in his name was in fact stolen from him in 2004.
 {¶ 23} During an interview with Detective Carpentiere, Appellant claimed ownership of the gun, and admitted that he was the owner of the Honda. Detective Carpentiere also interviewed Mr. Fedikovich, who noted that he had seen this car at the victim's house on many other occasions. Detective Carpentiere testified, that, after discovering that Rivera had been arrested, Appellant changed his story and ultimately admitted that he, Rivera, and Chisolm came to Lorain, Ohio from Cleveland together. Initially, Appellant had maintained that the two ran into Rivera while in Lorain.
 {¶ 24} Furthermore, Jeffrey Lynn from the Ohio Bureau of Criminal Identification and Investigation testified that an analysis of Appellant's hand samples indicated that Appellant's right hand possessed particles highly indicative of gunshot primer residue. He testified that this finding was "consistent with that individual having discharged a firearm, having been in the vicinity of a firearm when it was discharged, or having handled an item with gunshot primer residue on it."
 {¶ 25} Appellant argues that the prosecution relied on circumstantial evidence to establish that Appellant threw his gun from the car. Appellant claimed ownership of the gun, and admitted that he possessed and had control of the gun. R.C.2921.12(A) provides:
"(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
"(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
"(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."
 {¶ 26} It is well established that circumstantial evidence and direct evidence possess the same probative value. State v.Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" State v.Daniels (June 3, 1998), 9th Dist. No. 18761, quoting Jenks,
61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" State v. Chisolm
(July 8, 1992), 9th Dist. No. 15442, quoting Jenks,61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts.State v. Lott (1990), 51 Ohio St.3d 160, 168, citing Hurt v.Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case.Lott, 51 Ohio St.3d at 168, citing Hurt, 164 Ohio St. at 331.
 {¶ 27} Based upon the foregoing, and viewing the direct and circumstantial evidence presented in the light most favorable to the prosecution, we cannot find that the evidence was insufficient to convict Appellant of these charges. SeeThompkins, 78 Ohio St.3d at 386. Appellant's first and second assignments of error are overruled.
 B. Third Assignment of Error
"THE TRIAL COURT ERRED IN IMPOSING THE SENTENCE FOR THE TAMPERING WITH EVIDENCE COUNT TO BE SERVED CONSECUTIVE TO THE LIFE SENTENCE FOR THE AGGRAVATED MURDER COUNT[.]" [sic]
 {¶ 28} In his third assignment of error, Appellant contends that the trial court erred when it ordered him to serve his sentence for the tampering with evidence conviction consecutive to the sentence for the aggravated murder conviction. Appellant argues that the court did not make the statutory findings set forth in R.C. 2929.14(E)(4), or in the alternative that the findings the court made were not supported by the record.[1] Appellant urges this Court to remand the case to the trial court for re-sentencing.
 {¶ 29} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs three and four of the syllabus, the Ohio Supreme Court found R.C. 2929.14(E) to be unconstitutional and excised that section from the statute. State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19-20. This Court has construed the court in Foster as having excised R.C. 2953.08(G) for the same reason. Dudukovich at ¶ 20, citing Foster at ¶ 97.
 {¶ 30} Trial courts are no longer required to make the statutory findings listed in R.C. 2929.14(E) for the imposition of consecutive sentences. State v. Mathis, ___ Ohio St.3d ___,2006-Ohio-855, paragraph one of the syllabus. Foster "grant[ed] trial court judges full discretion to impose sentences within the ranges prescribed by statute." Dudukovich at ¶ 19. Thus, "an appellant may not premise error on the alleged procedural deficiencies of the trial court's sentencing entry." Id. at ¶ 20.
 {¶ 31} Based upon the foregoing, Appellant's third assignment of error lacks merit and is overruled.
 III. {¶ 32} Appellant's first, second, and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J., Moore, J., concur.
[1] We observe that Appellant does not challenge the constitutionality of R.C. 2929.14(E)(4).